Susan Martin (AZ #014226)
Jennifer Kroll (AZ #019859)
Michael M. Licata (AZ #033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff and the proposed classes*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Timmieo Curry, | Case No.: 4:22-cv-00129-JAS |
| Plaintiff, on behalf of himself and all others similarly situated | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| Raytheon Company; Raytheon Bargaining Retirement Plan; Raytheon Technologies Corporation; Does 1 through 10, Plan Administrator of the Raytheon Bargaining Plan, | |
| Defendants. | |

Plaintiff Timmieo Curry, on behalf of himself and others similarly situated, brings this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* to declare his rights under the terms of the Raytheon Bargaining Retirement Plan and predecessor plans (together referred to herein as the "Plan") and to enforce his rights and remedy violations of the Plan and ERISA.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

2.    Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the claims arose, the breach took place and the pension plan is administered in the District of Arizona, and Defendants do business and may be found in this District.

**PARTIES**

3.    Plaintiff Timmieo Curry ("Mr. Curry"), is and was a "participant" in the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

4.    Defendant Plan is a defined benefit "employee pension benefit plan" within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiff.

5.    Defendant Raytheon Company is the "administrator" of the Plan and a "fiduciary" with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

6.    Upon information and belief, in or around April 2020, Raytheon Company and United Technologies Corporation merged and Raytheon Company became a wholly owned subsidiary of Raytheon Technologies Corporation. Unless the context suggests otherwise, Raytheon Company and Raytheon Technologies Corporation are referred to herein as "Raytheon."

7.    Following the merger of Raytheon Company and United Technologies Corporation, Raytheon Technologies Corporation became an "administrator" and a "fiduciary" with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

8.    Does 1 through 10 are persons or entities whose identities are unknown to Plaintiff at this time and who, upon information belief, include the Senior Vice President of Human Resources of Raytheon and/or other persons and entities who are or appointed by the Senior Vice President of Human Resources of Raytheon to function as the "administrator" of the Plan and as "fiduciaries" at relevant times with respect to the Plan

2

within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A). Plaintiff will amend the Complaint to state the true names and capacities of Does 1 through 10 when they have been ascertained.

## GENERAL ALLEGATIONS

9. Mr. Curry was employed in Tucson, Arizona by Hughes Aircraft ("Hughes") and its successors, including Raytheon, for more than 33 years from in or around 1985 through in or around September 1996 and from in or around April 1998 until his retirement effective July 1, 2020.

10. Mr. Curry began working for Hughes in or around 1985 as an electronic technician, a bargaining unit employee.

11. Prior to December 22, 1990, Mr. Curry elected to commence contributions to the Hughes Bargaining Retirement Plan ("Hughes Plan"), a predecessor to the Raytheon Bargaining Retirement Plan.

12. In accordance with the terms of the Plan, Mr. Curry became a participant under the Plan before December 22, 1990.

13. Upon information and belief, at the time Mr. Curry commenced participation in the Plan, any participant who had a separation from service and later returned to employment was entitled to resume active participation in the Plan.

14. In or around December 1997, Raytheon Company acquired Hughes Aircraft and upon information and belief, in connection with its acquisition of Hughes Aircraft, Raytheon Company committed to continue the Plan.

15. In connection with the merger and acquisition of Hughes Aircraft, Raytheon Company received the assets and assumed the liabilities and the responsibilities and obligations to administer the Plan and the Plan became the Raytheon Bargaining Retirement Plan.

16. Upon information and belief, at the time Mr. Curry commenced active participation in the Plan, the Plan required that in order to accrue benefits, employees must agree to contribute a fixed percentage of their salary to the Hughes Plan.

17. Mr. Curry contributed to the Plan following his election to do so until his employment terminated in or around September 1996.

18. Upon information and belief, after Mr. Curry became a participant in the Plan, the Plan was amended retroactively in or around 1991 to provide that in addition to the contributory benefit structure ("contributory part"), the Plan would offer a non-contributory benefit structure ("non-contributory part") which did not require employee contributions.

19. Upon information and belief, when it was contemplating establishing the non-contributory part of the Plan, the Company including Plan fiduciaries advised Mr. Curry and other class members that they could elect to be in the non-contributory part of the Plan and that the benefits were lower under the non-contributory part of the Plan because there were no contributions required.

20. Upon information and belief, at the time Defendants contemplated establishing the non-contributory part of the Plan, Defendants expressly advised participants that if they elected to participate in the contributory part of the Plan, they could suspend their contributions and later resume them, but that they would remain participants in the contributory part of the Plan.

21. Upon information and belief, at the time Defendants contemplated establishing the non-contributory part of the Plan, Defendants did not advise Mr. Curry and similarly situated participants that if they left the Company voluntarily and returned to the Company, they would be unable to continue to participate in the contributory part of the Plan.

22. In reliance on Defendants' representations, Mr. Curry elected to participate in the contributory part of the Plan and continued to participate in and make contributions under the contributory part of the Plan.

23. At the time he briefly left employment in 1996, Mr. Curry was fully vested in the Plan.

24.     During Mr. Curry's brief hiatus of employment, in or around November 1996, the Hughes Plan paid Mr. Curry a lump sum payment of $8,517.70 which Defendants stated constituted Mr. Curry's own contributions and interest through the termination of his employment.

25.     Upon information and belief, the terms of the Plan in effect when Mr. Curry left employment in 1996 allowed Mr. Curry to continue his participation under the contributory part of the Plan upon his rehire.

26.     When Mr. Curry returned to employment in April 1998, upon information and belief, he was entitled to continue his participation in the contributory part of the Plan.

27.     Upon information and belief, the terms of the Plan in effect when Mr. Curry left employment in 1996 and the terms of the Plan in effect when Mr. Curry returned to employment in April 1998 both allowed Mr. Curry to restore the benefits he had earned that were attributable to his own contributions by paying back the $8,517.70 he had received with interest.

28.     In or around April, 1998, Mr. Curry was rehired by Raytheon Company, which, as set forth above, had acquired Hughes Aircraft in or around December 1997.

29.     When Mr. Curry was rehired in or around April 1998 and for the next ten years, he worked in the same bargaining unit job he had previously worked in for a total of approximately 21 years in the same bargaining unit job.

30.     Mr. Curry remained in the same bargaining unit job until in or around August 2008, when he began working as a salaried electrical engineer at Raytheon Company.

31.     As a salaried employee, Mr. Curry participated in and accrued benefits under the Raytheon Salaried Pension Plan from in or around 2008 until he retired effective July 1, 2020.

32.     Defendants asserted in the 2021 denial of Mr. Curry's appeal to the Plan Administrator that Mr. Curry should have been placed in the non-contributory part of the Plan following his April 1998 rehire purportedly because participants who voluntarily

terminated employment were not permitted to have their participation restored in the non-contributory part of the Plan.

33.    The failure to place Mr. Curry in the contributory part of the Plan upon his return to employment violated the terms of the Plan, including, upon information and belief, the Plan in effect when Mr. Curry left employment in 1996 and the Plan document, in effect when Mr. Curry returned to employment in April 1998.

34.    Upon information and belief, at some time after Mr. Curry left employment and/or returned to employment in April 1998, the exact date of which is currently unknown, the Plan was amended retroactively to terminate the participation in the contributory part of the Plan for participants who voluntarily left employment and came back to work.

35.    At no time prior to his voluntary separation from employment in September 1996, nor during the approximate 18 months prior to his return to employment, nor at the time of his reemployment did Defendants ever provide to Mr. Curry notice that the Plan had been amended to purport to prohibit resumption of active status under the contributory part of the Plan for employees who voluntarily terminated their employment and were subsequently rehired.

36.    Contrary to their earlier representations to employees that the election to participate in the contributory or non-contributory part of the Plan was a on-time occurrence and that the part of the Plan elected would be the part of the Plan in which the employee remained, Defendants purported to adopt a Plan provision directly contrary to those representations and did not disclose and concealed from Mr. Carry and other Plan participants that if they left voluntarily and were subsequently rehired, they would be barred from participating in the active part of the Plan.

37.    Upon information and belief, no notice was provided to other similarly situated Plan participants that the Plan had changed and that if they terminated employment voluntarily and were rehired, Defendants would place them in the non-contributory part of the Plan and that they would not be eligible to participate in the contributory part of the Plan upon their rehires.

38.     Upon information and belief, at the time Mr. Curry left employment in September 1996, the Plan's summary plan description did not advise participants that upon voluntarily leaving employment and returning, a participant could not rejoin the contributory part of the Plan and did not disclose to participants that if they voluntarily terminated and later returned to employment they would be placed in the non-contributory part of the Plan.

39.     Although the Plan and ERISA require that participants who leave employment and withdraw their own contributions from the Plan be provided a right to repay those contributions within the five years following their return to employment and thereby restore their accrued benefits attributable to their contributions, Mr. Curry was never provided with any notice or other information advising him about his right to repay his withdrawn contributions nor was he provided an opportunity to repay his withdrawn employee contributions.

40.     At no time prior to Mr. Curry's decision to withdraw his contributions was he advised that he would not be able to repay the withdrawn contributions when he returned to work or that the amount of the contributions would be inflated by compounded phantom interest through his normal retirement date and offset from his benefits using assumptions based on an outdated 1971 mortality table and additional interest.

41.     When Mr. Curry returned to employment in or around April 1998, he was advised by Raytheon Company that he could not pay back his withdrawn contributions because the Plan had changed, that the Plan was no longer contributory, and that contributions were no longer required.

42.     Upon information and belief, no notice or other information was provided to similarly situated participants in the Plan who left employment and returned to employment of their right to repay withdrawn contributions in the contributory part of the Plan or that the right to repay withdrawn contributions under the Plan had been amended to limit that right only to laid off employees who returned to employment.

43. Prior to becoming a salaried employee in 2008, Mr. Curry did not receive any statements showing the benefits he had accrued under the Plan, nor did he have on-the-job access to electronic retirement benefit information.

44. After he became a salaried employee, Mr. Curry had access to Raytheon's online benefits center.

45. Upon information and belief, Defendants encouraged Mr. Curry and similarly situated participants to use Raytheon's benefits website to obtain information and estimates of retirement benefits.

46. Through Raytheon's online benefits center, by typing in his personal information, his anticipated termination date and anticipated benefits commencement date, Mr. Curry obtained pension benefits statements from time to time, which showed his estimated benefits.

47. Upon information and belief, the online benefits statements that Mr. Curry requested and received periodically from Defendants computed his benefits by calculating all of his service prior to his becoming a salaried employee under the contributory part of the Plan.

48. Upon information and belief, despite prior notice regarding the failure to disclose and reflect the Plan's assertions regarding the Defendants systematically provided estimates of benefits to both bargaining and non-bargaining unit employees in response to their written requests for benefit statements that computed benefits for employees who voluntarily left and then returned to employment by overstating the amount of benefits that Raytheon contends it is obligated to provide and that it is actually providing at retirement.

49. The last time Mr. Curry made a written request for an estimate of his retirement benefits was in or around April 2020.

50. The April 2020 benefits information Mr. Curry received showed he would receive a monthly pension benefit from the contributory part of the Plan of $934.21 per month as a single life annuity.

8

51.    In reliance upon the information Defendants provided about his benefits, Mr. Curry determined to retire effective July 1, 2020, submitted his retirement application to be effective July 1, 2020 and elected the five-year period Temporary Modified Cash Refund Annuity Option under the contributory part of the Plan which Defendants advised him was $7,472.47 per month payable over five years.

52.    Following his retirement After Mr. Curry left his employment, completed his pension application and elected his optional benefit form and retired, and without any prior notice to Mr. Curry, Defendants paid him a pension benefit under the contributory part of the Plan that was not in the amount of $7,472.47 per month as he had been advised, but instead in the amount of $997.29 per month.

53.    When Mr. Curry called to find out why his pension benefits had been reduced by $6,475.18 per month, Defendants wrote him a letter dated August 7, 2020 telling him that their calculation of his benefits was incorrect, allegedly because they incorrectly provided him with benefit accrual service after he returned to employment in April 1998 under the contributory part of the Plan.

54.    The August 7, 2020 letter to Mr. Curry failed to enclose or show the calculation for the reductions Defendants imposed.

55.    Upon information and belief, despite express notice that Raytheon's benefits statements failed to account for the impact on benefits of employees who leave employment, withdraw their contributions and subsequently return, Defendants failed to oversee the systematically incorrect benefit statements and disclosures.

56.    Upon information and belief, despite repeated, systematic errors in benefits statements provided to Plan participants, Defendants failed to correct the inaccuracies or ensure that benefits statements provided to participants are accurate and complete.

57.    Defendants applied an offset to Mr. Curry's benefits allegedly based on his withdrawn contributions despite informing Mr. Curry that he was not permitted to repay the withdrawn contributions Mr. Curry had received in 1996.

58.    The reduction in Mr. Curry's benefits based on his withdrawn contributions resulted in Mr. Curry receiving significantly less in benefits under the contributory part of the Plan than he would have received under the non-contributory part of the Plan had he been in the non-contributory part of the Plan.

59.    No reduction based on withdrawn contributions of any amount is permitted for Mr. Curry, as he was advised he had no right to repay his withdrawn contributions.

60.    The reduction that Defendants purported to apply to Mr. Curry's benefits based on the contributions that Mr. Curry received in 1996 was calculated to impose an improper offset by using phantom interest compounded annually to age 65 (even though Mr. Curry retired at age 55) and by using an outdated 1971 mortality table and additional erroneous interest, the effect of which was to increase the offset and reduce Mr. Curry's benefits in violation of the terms of the Plan and ERISA and regulations thereunder.

61.    If upon reemployment, a participant who has withdrawn contributions is permitted to, but elects not to, repay contributions received upon a prior termination of employment the only offset permitted under the Plan is the actuarial equivalent of the withdrawn amount to wit: a monthly amount, which when calculated over the expected life of the participant, is equal to the amount of contributions the participant was actually paid upon the withdrawal, not an amount inflated by interest to age 65.

62.    Were any reduction determined to be permitted with respect to Mr. Curry's benefits, such amount would be limited to a total of $8,517.70 over his expected lifetime.

63.    The Plan does not provide for withdrawn contributions to be inflated by phantom interest to age 65 nor does it permit the withdrawn contributions to be converted to an offset using the 1971 mortality table and additional interest.

64.    The reduction that Defendants applied that reduced Mr. Curry's benefits resulted in benefits that were not the actuarial equivalent of Mr. Curry's withdrawn contributions.

65.    The reduction that Defendants applied that reduced Mr. Curry's benefits were not the benefits provided for under the terms of the Plan

66. The reduction that Defendants applied that reduced Mr. Curry's accrued benefits resulted in a forfeiture of benefits derived from employer contributions under the Plan.

67. Upon information and belief, Defendants calculate the benefits of similarly situated participants in the same manner and apply reductions for withdrawn contributions in violation of the terms of the Plan and ERISA.

68. Upon information and belief, neither the Plan's summary plan descriptions nor any other communications by Defendants to participants disclose to participants that if they withdraw their contributions upon termination of employment prior to retirement and they are not repaid, they will lose or be denied pension benefits because their pension benefits will be reduced not only by the amount of the withdrawn contributions but by the withdrawn contributions increased by phantom interest compounded from the date of distribution to age 65 and converted to an annuity using an outdated mortality table and additional improper interest.

69. Although Mr. Curry made multiple written requests for the calculation of the reduction following his retirement and during the administrative claim and appeal process, Defendants concealed and did not disclose the calculation of the offset until after Mr. Curry filed this lawsuit.

70. Although the non-contributory part of the Plan that Mr. Curry was placed in upon his return to employment provided significantly lower benefits and benefit formulas than the contributory part of the Plan, Defendants applied reductions to Mr. Curry's benefits under the contributory part of the Plan that resulted in lower benefits than the benefits he would have received under the non-contributory part of the Plan.

71. On September 3, 2020, prior to submission of Mr. Curry's appeal, Mr. Curry, through counsel, requested the Plan Administrator to provide him with documents and information under which the Plan was established and is required to be maintained and administered, including, *inter alia*, all Plan restatements and all amendments thereto and all summary plan descriptions in effect during Mr. Curry's entire period of employment

11

from 1985 through June 2020 along with all documents, records and other information relating to the Plan's calculation of Mr. Curry's retirement benefits, including the calculation of any offsets applied to Mr. Curry and the actuarial factors used to calculate offsets to Mr. Curry and the calculation of Mr. Curry's optional forms of benefits.

72.    Mr. Curry also asked for all notices of changes to the Plan that Defendants provided to Plan participants from 1985 through 1998.

73.    By letter dated September 22, 2020, the Plan Administrator responded to Plaintiff's document request and failed to provide the Plan documents or summary plan descriptions existing when Mr. Curry began participating in the Plan in 1991 through September 1996 when he briefly left employment nor did the Plan Administrator provide a single Plan amendment adopted at any time during Mr. Curry's employment.

74.    The earliest Plan document provided in response to Plaintiff's document request was the purported February 1997 Plan document, purportedly adopted during Mr. Curry's brief hiatus from active employment.

75.    The earliest Plan document Defendants provided in response to Plaintiff's document request reciting that Raytheon Company assumed Plan sponsorship and that the Hughes Plan was spun off to it is a document that Defendants state was effective in December 1999, more than 18 months after Mr. Curry returned to employment and was entitled to continue his participation and accrue benefits under the contributory part of the Plan.

76.    The earliest summary plan description Defendants provided in response to Plaintiff's document request is dated January 2000, nine years after Mr. Curry began participating in the Plan and almost two years after he returned to employment.

77.    Even though Defendants made material changes to the Plan respecting eligibility for participation and benefits, Defendants failed to provide timely notice of any such changes and admitted in response to Plaintiff's request for documents that there were no summaries of material modifications for the Plan nor did Defendants provide any notices pursuant to ERISA § 204(h) regarding reduction in the rate of future benefit accrual.

78.    By letter dated December 8, 2020, which was received by Defendants on December 15, 2020, Mr. Curry timely submitted an appeal from Defendants' August 7, 2020 letter as Defendants directed.

79.    In violation of the Plan and ERISA and regulations thereunder, both of which require Defendants to respond to the appeal within 60 days, Defendants did not advise Mr. Curry that it needed an extension to decide his appeal and instead waited 93 days, until March 18, 2021 to respond to Mr. Curry's appeal.

80.    By letter dated March 18, 2021, Defendants denied Mr. Curry's appeal.

81.    By letter dated March 23, 2021, Plaintiff, through counsel, requested that the Plan Administrator provide documents that Mr. Curry was entitled to following denial of his appeal and documents Plaintiff was entitled to upon written request pursuant to ERISA, including, *inter alia*:

   a.   All documents, records and information relied on in calculating Mr. Curry's benefits and denying his appeal;

   b.   All documents, records and information considered, generated or submitted in connection with the calculation of Mr. Curry's retirement benefits and denial of his appeal, without regard to whether such documents, records or information were relied upon in making the benefit determinations; and

   c.   All documents, records and information that demonstrate compliance with the Plan's administrative procedures and safeguards to ensure benefit claims determinations are made in accordance with governing Plan documents and that Plan provisions have been applied consistently with respect to Mr. Curry and similarly situated claimants;

   d.   The Plan documents in effect during Mr. Curry's employment together with all amendments thereto;

      e.  The summary plan descriptions in effect during Mr. Curry's employment; and

      f.  Notices provided to participants regarding changes and amendments to the Plan.

82.  Mr. Curry did not receive any response to his March 23, 2021 request; thereafter, Mr. Curry counsel sent yet another letter to Defendants dated February 8, 2022 asking for the documents Mr. Curry was entitled to under ERISA.

83.  By letter received by Mr. Curry's counsel on or about March 9, 2022, Defendants provided an exact copy of the September 22, 2020 letter and attachments but did not provide any additional documents.

84.  As of the date of the filing of this Complaint, Mr. Curry has not received all of the documents responsive to his March 23, 2021 and February 8, 2022 letters, including, but not limited to, the Plan document in effect during Mr. Curry's employment and the amendments thereto together with copies of any notices provided to participants regarding changes to the Plan.

85.  Mr. Curry has fully exhausted any required administrative remedies.

## CLASS ALLEGATIONS

86.  In addition to Plaintiff's individual claims for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action consisting of the following classes:

Class 1: All participants who at any time under the contributory part of the Plan and, if deceased, their surviving spouses and/or beneficiaries, who, following a voluntary separation from service prior to retirement, were rehired and unilaterally assigned to the non-contributory part of the Plan upon rehire.

Class 2: All vested participants under the contributory part of the Plan and, if deceased, their surviving spouses and/or beneficiaries, who incurred a separation from service prior to retirement, whether voluntary or involuntary,

withdrew their contributions upon separation from service prior to retirement were rehired prior to retirement and did not repay and/or were not permitted to repay their contributions to the Plan.

87.     Upon information and belief, the classes are so numerous that joinder is impracticable including because of the number of class members and because the members of the classes are geographically dispersed.

88.     There are questions of law and fact common to the members of the classes that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations of the Plan and ERISA including, *inter alia*:

    a.  Whether Defendants concealed Plan provisions and failed to provide required and/or accurate disclosures including, *inter alia*, notices of material modifications and accurate summary plan descriptions;

    b.  Whether Defendants violated ERISA and the terms of the Plan by failing to provide Class 2 members with the right to repay withdrawn contributions when they had a severance from employment and were rehired;

    c.  Whether Defendants violated ERISA and the terms of the Plan by reducing Class 2 members' retirement benefits by amounts purportedly attributable to class members' withdrawn contributions inflated by phantom, compounded interest to age 65 and converted to a life annuity using an outdated mortality table and additional inappropriate interest;

    d.  Whether Defendants violated ERISA, including by reducing accrued benefits and the rate of future benefit accrual without notice, and/or whether Defendants violated the terms of the Plan by assigning Class 1 members who were in the contributory part of the Plan to the non-contributory part of the Plan who were rehired prior to retirement following a severance from service;

15

    e.  Whether Defendants breached their fiduciary duties to the class members;

    f.  Whether Defendants failed to maintain a written plan in accordance with the requirements of ERISA; and

    g.  Whether Defendants violated ERISA and/or the terms of the Plan by failing to provide accurate benefit statements to class members including upon their written requests.

89.    The claims of Mr. Curry are typical of the class members and Mr. Curry will fairly and adequately represent the interests of the class members. He has diligently pursued his claims and engaged the undersigned experienced ERISA and class action counsel.

90.    The prosecution of separate proceedings by the individual members of the classes would create a risk of inconsistent or varying adjudications that would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

91.    Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the classes as a whole by engaging in the same violations of ERISA and the terms of the Plan with respect to the classes, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the classes as a whole.

92.    A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

    a.  the class members have suffered from the same violations of ERISA and the numbers and likely geographic diversity of class members make joinder impractical; and

    b.  the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for individual participants likely

16

constitute a significant and recurring obstacle to the ability of individual class members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these complex ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause loss of valuable pension and ERISA rights unless remedied through injunctive and other appropriate relief.

**COUNT I**
**(TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B))**

93. Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

94. By the acts and omissions set forth above, including, *inter alia*, by failing to place Mr. Curry and other Class 1 members in the contributory part of the Plan upon rehire, by failing to provide Mr. Curry and certain Class 2 members with an opportunity to repay withdrawn contributions upon rehire and by reducing Mr. Curry's and Class 2 members' benefits by their withdrawn contributions and/or withdrawn contributions inflated by phantom interest to age 65 and by use of an outdated mortality table and additional inappropriate interest, Defendants violated the terms of the Plan.

95. As a proximate result of Defendants' violations of the terms of the Plan, Plaintiff and class members were harmed and deprived of benefits due under the terms of the Plan.

96. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that:
A civil action may be brought -
        (1) by a participant or beneficiary - . . .
                                    ***
(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

97. Pursuant to ERISA § 502(a)(1)(B), as a result of Defendants' violations of the terms of the Plan, Plaintiff and class members are entitled to an order declaring that Defendants violated the terms of the Plan, enjoining Defendants from violating the terms

17

of the Plan and directing Defendants to pay Plaintiff and class members all benefits retroactively to the date of commencement of benefits, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

**COUNT II**
**(TO REDRESS VIOLATIONS OF ERISA'S ACCRUAL OF BENEFITS,**
**VESTING AND NONFORFEITURE REQUIREMENTS PURSUANT TO**
**SECTION 502(a)(3))**

98.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though set fully set forth herein.

99.    ERISA § 203, 29 U.S.C. § 1053, and regulations thereunder provide minimum vesting standards and set forth the conditions under which a participant's right to benefits under a plan becomes nonforfeitable.

100.    ERISA § 203(a), 29 U.S.C. § 1053(a), provides in part that:

**(a) Nonforfeitability requirements**
Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
**(1)** A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
**(2)(A)(i)** In the case of a defined benefit plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).
**(ii)** A plan satisfies the requirements of this clause if an employee who has completed at least 5 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

***

**(D)(i)** A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that, in the case of a participant who does not have a nonforfeitable right to at least 50 percent of his accrued benefit derived from employer contributions, such accrued benefit may be forfeited on account of the withdrawal by the participant of any amount attributable to the benefit derived from mandatory contributions (as defined in the last sentence of section 1054(c)(2)(C) of this title) made by such participant.
**(ii)** Clause (i) shall not apply to a plan unless the plan provides that any accrued benefit forfeited under a plan provision described in such clause shall

18

be restored upon repayment by the participant of the full amount of the withdrawal described in such clause plus, in the case of a defined benefit plan, interest. Such interest shall be computed on such amount at the rate determined for purposes of section 1054(c)(2)(C) of this title (if such subsection applies) on the date of such repayment (computed annually from the date of such withdrawal). The plan provision required under this clause may provide that such repayment must be made (I) in the case of a withdrawal on account of separation from service, before the earlier of 5 years after the first date on which the participant is subsequently re-employed by the employer, or the close of the first period of 5 consecutive 1-year breaks in service commencing after the withdrawal; or (II) in the case of any other withdrawal, 5 years after the date of the withdrawal.
***

**(v) Cross reference**
For nonforfeitability where the employee has a nonforfeitable right to at least 50 percent of his accrued benefit, see section 1056(c) of this title.

101.    ERISA § 206(c), 29 U.S.C. § 1056(c) provides in part as follows:
(c) Forfeiture of accrued benefits derived from employer contributions
No pension plan may provide that any part of a participant's accrued benefit derived from employer contributions (whether or not otherwise nonforfeitable) is forfeitable solely because of withdrawal by such participant of any amount attributable to the benefit derived from contributions made by such participant. The preceding sentence shall not apply (1) to the accrued benefit of any participant unless, at the time of such withdrawal, such participant has a nonforfeitable right to at least 50 percent of such accrued benefit, or (2) to the extent that an accrued benefit is permitted to be forfeited in accordance with section 1053(a)(3)(D)(iii) of this title.

102.    ERISA and regulations thereunder, including 29 C.F.R. § 1.411(a)-7(d), provide that a pension plan may not permit a forfeiture of benefits derived from mandatory contributions that have been distributed unless the plan provides notice and opportunity to repay such benefits within five years after the employee returns to employment.

103.    ERISA §204(g), 29 U.S.C. §1054(g) provides in part:
(g) Decrease of accrued benefits through amendment of plan
(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
(2) For purposes of paragraph (1), a plan amendment which has the effect of–

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.

104.    ERISA § 204(h), 29 U.S.C § 1054(h), at all relevant times hereto provided that a pension plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date…" to each plan participant.

105.    Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

106.    By the acts and omissions complained of above, including by, *inter alia*: amending the Plan retroactively to deprive Class 1 members of their accrued benefits under the contributory part of the Plan; enacting amendments that reduced future benefit accruals without notice; failing to provide Mr. Curry and Class 2 members with options to repay withdrawn employee contributions; and by offsetting Mr. Curry's and Class 2 members' benefits based on contributions they withdrew upon separation from service without providing the opportunity to pay those contributions, and by inflating the amount of the offset of withdrawn contributions utilizing inflated phantom, compounded interest, Defendants violated ERISA §§ 203, 204, 206, 29 U.S.C. § 1053, 1054, 1056 and regulations thereunder.

107.    As a result of the foregoing violations of ERISA, Plaintiff and class members have been harmed and have been deprived of benefits due to them under the terms of the

20

Plan and ERISA.

108.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and class members are entitled to declaratory, injunctive, make whole and other equitable relief, including, but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA §§ 203, 204, 20, 29 U.S.C. §§ 1053, 1054, 1056 and applicable regulations; declaring that the amendments terminating Class 1 members' rights to return to the contributory part of the Plan upon a voluntary separation from service never became effective and ordering Defendants to recalculate and pay Class 1 members their accrued benefits for all of their service under the Plan following their rehire; enjoining Defendants to cease and desist from reducing Plaintiff's and Class 2 members' benefits based on withdrawn contributions and/or withdrawn contributions inflated by phantom compounded interest to age 65, an outdated mortality table and additional improper interest and directing Defendants to recalculate and pay Mr. Curry's and Class 2 members' benefits without reductions for withdrawn contributions and/or withdrawn contributions inflated by phantom compounded interest, an outdated mortality table and additional improper interest, and immediately pay all benefits wrongfully offset and withheld; surcharging the fiduciaries; reforming the Plan to permit Mr. Curry's and Class 1 members' participation in the contributory part of the Plan unless and until notice of a future reduction in benefit accrual is provided, eliminating offsets for withdrawn contributions and/or withdrawn contributions inflated by phantom compounded interest; requiring Defendants to disgorge all profits and benefits gained from the wrongful violations of ERISA's vesting and accrual of benefits requirements; enjoining Defendants to pay all accrued benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

**COUNT III**
**(TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)**

109.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs

21

as though fully set forth herein.

110.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
***
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

111.    Defendants have a fiduciary responsibility to provide Plaintiff and class members with truthful and adequate disclosures of benefits provisions, to administer the Plan in accordance with ERISA and the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA, and to oversee the operation of the Plan and to remedy errors and omissions.

112.    By the acts and omissions complained of above, including, *inter alia*, by applying amendments retroactively to reduce accrued benefits and future benefit accruals without notice, by concealing and failing to adequately provide notice of Plan provisions and amendments, by failing to give advance notice to Mr. Curry and Class 1 members that the Plan was amended to eliminate the right to return to the contributory part of the Plan upon a voluntary termination of employment, by failing to provide notice and opportunities to Mr. Curry and Class 2 members to repay withdrawn contributions, by failing to oversee and correct benefits statements and other disclosures that Defendants knew or should have known were incorrect, by failing to determine participants' rights to benefits under the Plan with reference to nonforfeitable rights and accrued benefits under the Plan, and by

22

depriving Plaintiff and class members of rights protected by ERISA and the terms of the Plan, Defendants breached their fiduciary duties to Plaintiff and class members.

113.    As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff and class members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA and Defendants have been unjustly enriched.

114.    ERISA § 409(a), 29 U.S.C. § 1109(a), provides in part:
    (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

115.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."

116.    Pursuant to ERISA §§ 409(a), 502(a)(2) and 502(a)(3), Plaintiff and class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and violated ERISA § 404 and applicable regulations; enjoining Defendants from applying retroactive and/or nondisclosed amendments and offsets that do not comply with the terms of the Plan and ERISA; surcharging the fiduciaries; reforming the Plan, *inter alia*, to eliminate Plan amendments that reduced accrued benefits and/or reduced future benefit accruals without notice and declaring that such amendments never became effective and enjoining Defendants to immediately make Plaintiff and all class members whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

**COUNT IV**
**(TO REDRESS VIOLATIONS OF ERISA'S WRITTEN PLAN AND DISCLOSURE REQUIREMENTS)**

117.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

118.    Section 101 of ERISA, 29 U.S.C. § 1021, Duty of Disclosure and Reporting, provides in relevant part:

(a) Summary plan description and information to be furnished to participants and beneficiaries
The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan--
(1) a summary plan description described in section 1022(a)(1) of this title; and
(2) the information described in subsection (f) and sections 1024(b)(3) and  1025(a) and (c) of this title.

119.    Section 102 of ERISA, 29 U.S.C. § 1022, Summary Plan Description, provides in relevant part:

(a)    A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 104(b)(1) of this title.

(b) The summary plan description shall contain the following information: the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries

24

may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this title).

120.   Section 104(b) of ERISA, 29 U. S. C. § 1024(b), Publication of Summary Plan Description and Annual Report to Participants and Beneficiaries of Plan, provides in relevant part:

(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title–

(A)   within 90 days after he becomes a participant, or (in the case of a (beneficiary) within 90 days after he first receives benefits, or

(B)   if later, within 120 days after the plan becomes subject to this part. The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 1022 of this title every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan... .

(2)   The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan

participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations).

(3) Within 210 days after the close of the fiscal year of the plan, the administrator (other than an administrator of a defined benefit plan to which the requirements of section 1021(f) of this title applies) shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

121. Section 105 of ERISA, 29 U.S.C. § 1025, as in effect upon Mr. Curry's return to employment in April 1998 provided that a plan administrator must furnish a benefit statement annually setting forth, *inter alia*, the nature, amount and form of a deferred vested benefit to which a participant is entitled.

122. Section 105 of ERISA, 29 U.S.C. § 1025, as in effect beginning in or around 2006 provides that the administrator of a defined benefit plan must furnish benefit statements to participants at least once every three years and upon written request:

(B) Defined benefit plan
The administrator of a defined benefit plan (other than a one-participant retirement plan described in section 1021(i)(8)(B) of this title) shall furnish a pension benefit statement--
**(i)** at least once every 3 years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and
**(ii)** to a participant or beneficiary of the plan upon written request.

123. As an alternative to notice every three years, under ERISA §105(a)(3)(B)(i), 29 U.S.C. § 1025(a)(3)(B)(i) the administrator may provide notice to participants yearly of the right to receive a benefit statement and how to obtain it as follows:

In the case of a defined benefit plan, the requirements of paragraph (1)(B)(i) shall be treated as met with respect to a participant if at least once each year the administrator provides to the participant notice of the availability of the pension benefit statement and the ways in which the participant may obtain such statement. Such notice may be delivered in written, electronic, or other

appropriate form to the extent such form is reasonably accessible to the participant.

124.    Pursuant to ERISA § 105(a)(2), 29 U.S.C. § 1025(a)(2), the benefit statement provided to participants must include the participant's total accrued benefits.

125.    Section 402 of ERISA, 29 U.S.C. § 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

126.    By the acts and omissions complained of above, Defendants violated ERISA §§ 102, 104, 105, and 402 and regulations thereunder

127.    As a proximate result of Defendants' violations of ERISA §§ 102, 104, 105 and 402, Plaintiff and class members have been harmed and, *inter alia*: have been deprived of material disclosures required to be made by Plan fiduciaries and have been deprived of the ability to make timely, informed decisions regarding their retirement benefits, their employment following retirement, their savings, and their decisions regarding whether and when to retire, and Defendants have been unjustly enriched.

128.    Pursuant to ERISA § 502(a)(3), Plaintiff and class members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA §§ 102, 104, 105 and 402 and applicable regulations, enjoining Defendants from failing to comply with their disclosure obligations and from paying benefits that are not in accordance with benefit statements that were required to be provided, enjoining Defendants from applying Plan provisions and amendments that were not disclosed in accordance with ERISA and to recalculate all class members' benefits, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, and reforming the Plan as necessary or appropriate, together with pre-judgment and post-judgment interest, attorneys' fees, and costs.

### COUNT V
**(TO REDRESS DEFENDANTS' FAILURE TO PAY PROMISED BENEFITS UNDER ESTOPPEL PURSUANT TO SECTIONS 502(a)(1)(B) and (a)(3) OF ERISA)**

129. Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

130. As set forth herein, Defendants made promises to Mr. Curry about the amount of his benefits based on his earnings and service and knew or should have known that the statements were incorrect and that Mr. Curry would rely on them.

131. Mr. Curry reasonably relied to his detriment on payment of the benefits Defendants promised to him, including by electing to withdraw his contribution when he left employment in 1996, by continuing to work for Raytheon Company and in making plans for retirement and for savings.

132. By the acts and omissions set forth above, Plaintiff has been harmed.

133. As a result of the foregoing, Defendants are estopped to deny Plaintiff's entitlement to benefits under the contributory part of the Plan and from requiring that he repay any withdrawn contributions.

134. Accordingly, Plaintiff is entitled to declaratory, injunctive and other appropriate equitable relief, including, but not limited to, an order declaring that Defendants are estopped to deny benefits under the contributory part of the Plan during all of Plaintiff's employment under the Plan without an offset for withdrawn contributions, and an order directing Defendants to pay all benefits wrongfully withheld and/or offset, together with pre-judgment and post-judgment interest, attorneys' fees and costs.

## COUNT VI
### (TO REDRESS VIOLATIONS OF ERISA'S CLAIMS PROCEDURE REQUIREMENTS)

135. Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

136. Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:

In accordance with regulations of the Secretary, every employee benefit plan shall--

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by

28

the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

137.    ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators, *inter alia*, must provide claimants whose claims for benefits are denied with the specific reasons for the claim denial under the time frames set forth in the regulations, must provide claimants with documents and information showing that plan provisions have been applied consistently with respect to similarly situated claimants, must have administrative procedures and safeguards designed to ensure that benefit determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants, must provide claimants with the plan provisions relied upon, must provide a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary and must provide information relevant to an adverse benefit determination upon written request.

138.    By the acts and omissions set forth above, including, but not limited to, failing to provide a response to Plaintiff's claim for benefits and appeal within the time frames required under the regulations and failing to provide Plaintiffs relevant documents and information in response to his written requests, Defendants violated ERISA's claims procedure requirements.

139.    As a result of Defendants' acts and omissions set forth above, Plaintiff has been harmed and his rights to benefits and to pursue his claims were chilled, delayed and thwarted.

140.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1053, Plaintiff is entitled to appropriate declaratory, injunctive and equitable relief, including an order enjoining Defendants to provide a reasonable claims process and to follow ERISA's claims procedure requirements, ordering that no deference could apply to Defendants' benefit determinations, requiring Defendants to provide appropriate make-whole relief,

surcharging the Trustees and ordering Defendants to disgorge all profits and benefits gained from withholding Plaintiff's benefits and remedying Defendants' unjust enrichment together with pre-judgment and post-judgment interest, attorneys' fees and costs.

**COUNT VII**
**(INDIVIDUAL COUNT TO REDRESS VIOLATIONS OF ERISA'S REQUIREMENTS TO DISCLOSE PLAN DOCUMENTS UPON WRITTEN REQUEST)**

141.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

142.    Section 104(b)(4) of ERISA, 29 U.S.C. 1024(b)(4), provides in pertinent part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, and terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

143.    Section 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), provides in pertinent part:

> Any administrator. . .(B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may, in the court's discretion, be personally liable to such participant or beneficiary in the amount of up to [$100] a day from the date of such failure or refusal and the court may in its discretion order such other relief as it deems proper… For purposes of this paragraph, . . .each violation described in subparagraph (B) with respect to a single participant or beneficiary, shall be treated as a separate violation.

144.    Pursuant to the Debt Collection Improvement Act of 1996 (62 Fed. Reg. 40696) the $100 limit referred to in Section 502(c) of ERISA was increased to $110. 29 C.F.R. § 2575.502(c)(1) therefore states in pertinent part that: "The maximum amount of the civil monetary penalty established by Section 502(c)(1)(c)...ERISA [has been] increased from $100 a day to $110 a day."

30

145.    As set forth above, despite Mr. Curry's multiple written requests and Defendants' legal obligation to furnish documents, including Plan amendments, under which the Plan is established and maintained, Defendants failed to produce copies of the plan documents to which Mr. Curry was entitled under ERISA § 104, 29 U.S.C. § 1024 and the regulations thereunder.

146.    As a result of Defendants' acts and omissions set forth above, Mr. Curry has been harmed and his right to benefits and to pursue his claims for benefits was chilled, delayed and thwarted.

147.    Pursuant to ERISA § 502(a)(3), Defendant Plan Administrator should be enjoined to timely furnish the requested Plan documents and amendments and other documents requested by Plaintiff and pursuant to ERISA § 502(c)(1)(B), should be assessed a penalty of $110 per day for each separate violation for every day following 30 days after each of Plaintiff's multiple written requests for Plan documents that Defendant Plan Administrator failed to produce through the date the requested documents are furnished to Mr. Curry, together with costs and attorneys' fees.

WHEREFORE, Plaintiff requests that Judgment be entered in his favor and on behalf of the classes against Defendants as follows:

A.    Declaring that Defendants violated the terms of the Plan;

B.    Declaring that Defendants violated ERISA §§ 102, 104, 105, 203, 204, 206, 402, 404, 503 and regulations thereunder;

C.    Declaring that Defendants are estopped from denying Plaintiff's rights to benefits under the contributory part of Plan and from applying an offset based on Plaintiff's withdrawn contributions

D.    Enjoining Defendants from violating the terms of the Plan;

E.    Enjoining Defendants from violating ERISA §§ 102, 104, 203, 204, 206, 402, 404, 503 and regulations thereunder and enjoining application of any amendment(s) prohibiting reentry into the contributory part of the Plan following a voluntary termination of employment;

31

F.  Enjoining Defendants to recalculate Plaintiff's and class members' retirement benefits and restore the benefits that were reduced and withheld and to make Plaintiff and class members whole for all losses, including pre-judgment and post-judgment interest;

G.  Ordering reformation of the Plan, *inter alia*, to eliminate the provisions of challenged amendment(s) prohibiting reentry into the Plan upon a voluntary termination of employment, and prohibiting reductions of benefits based on withdrawn contributions and/or withdrawn contributions with phantom interest, declaring that such amendments never took effect, and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed;

H.  Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff and class members together with all profits attributable thereto;

I.  Surcharging the Plan Administrator for the full amount of Plaintiff's and class members' withheld benefits and such other amounts to make Plaintiff and class members whole;

J.  Awarding attorneys' fees and costs pursuant to ERISA § 502(g) and/or the common fund theory, and

K.  Awarding such other and further relief the Court deems just and proper.


**DATED** this 23rd day of November 2022.

MARTIN & BONNETT, P.L.L.C.
By: s/ Jennifer Kroll
Susan Martin
Jennifer Kroll
Michael M. Licata
4647 N. 32nd St., Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900

*Attorneys for Plaintiff and proposed classes*